IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAURICE STEVENS,

        Plaintiff

v.

WINGER, *Safety Manager*, MRS. HILL,
*Registered Nurse*, KIM SMITH, *CHCA*,
MICHAEL OVERMYER, *Superintendent*,
KERI MOORE, *Chief Grievance Officer*,
JOHN WETZEL, *Secretary of Department
of Correction*,

        Defendants

Case No. 1:18-cv-324

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 58]

MEMORANDUM OPINION

I.    Introduction

Plaintiff Maurice Stevens, who is currently an inmate at the State Correctional Institution at Fayette, filed a complaint against Defendants for events that took place while he was an inmate at the State Correctional Institution at Forest ("S.C.I. Forest"). ECF No. 3.[1] In the complaint, Plaintiff asserts claims of deliberate indifference pursuant to 42 U.S.C. § 1983 as well as state law claims of negligence.

Defendants have filed a Motion for Summary Judgment and documents in support thereof. ECF Nos. 58-61. Plaintiff has filed a Response and documents in support thereof. ECF Nos. 65-67. The motion is ripe for review.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In determining whether a genuine issue of material fact remains for trial, the court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings but must identify evidence that demonstrates the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Furthermore, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The moving party may also rely upon the absence of evidence to support an essential element of the opposing party's claim as a basis

2

for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.    Analysis

    A.    Facts

The following facts are undisputed.[2] On May 24, 2018, Plaintiff was housed in the Restricted Housing Unit ("R.H.U.") at S.C.I. Forest. On that date, Defendant R.N. Kathleen Hill responded to Plaintiff's cell for a medical call. Hill examined Plaintiff, who was alert and complaining of injury to his back from a fall from the top bunk. Hill noticed nothing else on the floor from the top bunk - no sheets, blankets, mattress, etc. Her examination of Plaintiff revealed no bruises, reddened areas, abrasions, contusions, lacerations, signs of paralysis, numbness, or tingling. He had good pulses and normal reflexes. She log-rolled Plaintiff and found he had full range of motion with good muscle strength and sensation intact. Although Hill questioned whether Plaintiff had actually fallen, she treated the pain he claimed to feel and provided him with Motrin.

On May 25, 2018, Plaintiff filed a grievance concerning this incident. This grievance was denied by Defendant Smith and the appeals therefrom were denied by Defendants Overmyer and Moore.

On May 29, 2018, Plaintiff was seen in the R.H.U. by Nurse Practitioner Leslie. Plaintiff claimed that the Motrin had helped his pain but reported that his back locked up if he sat too long. He also reported numbness in his leg. Leslie determined that there was no need for imaging at that time.

---

[2] These facts are taken from Defendants' Concise Statement of Undisputed Material Facts, ECF No. 60, and Plaintiff's Narrative Statement and his partial response to Defendants' Concise Statement of Undisputed Material Facts, ECF No. 65-8 at 1-4.

On June 5, 2018, Plaintiff was seen by Nurse Practitioner William Sutherland. Plaintiff complained of numbness in his hands and feet. He was prescribed Motrin and a thoracic x-ray was ordered. On June 12, 2018, Plaintiff saw Sutherland again for the same symptoms.

On June 13, 2018, Plaintiff had an x-ray which showed no spinal fracture or dislocation. The x-ray did show mild scoliosis. On June 21, 2018, Plaintiff was seen by Sutherland again for the same complaints. At that time, he was seen getting off the top bunk without difficulty. He was taken off Motrin and given Prednisone.

On July 5, 2018, Plaintiff was referred for physical therapy based on his continued complaints and a decreased range of motion. Plaintiff did not come to his next two appointments which were scheduled in response to his continued complaints.

On July 25, 2018, Sutherland diagnosed Plaintiff with sciatica.

      B.      Deliberate Indifference

            1.      Legal considerations

The Eighth Amendment "requires prison officials to provide basic medical treatment" for incarcerated persons. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted). To establish an Eighth Amendment claim based on inadequate medical care, a plaintiff must show: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Thus, to survive summary judgment on a claim brought under 42 U.S.C. § 1983 alleging that prison officials have violated the Eighth Amendment rights of an inmate, that inmate must produce evidence to support a finding that (1) his medical condition is "objectively, sufficiently serious" and (2) the defendant acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)

(quoting *Rouse*, 182 F.3d at 197). The subjective inquiry aspect of deliberate indifference is meant "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "[F]inding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)). The official "must be 'both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference.'" *Id.* The United States Court of Appeals for the Third Circuit has explained that deliberate indifference requires "obduracy and wantonness." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

      2.     RN Hill

In his Complaint, Plaintiff described his claim against Hill as follows: "Registered Nurse Hill was negligent as she left me immobile lying helplessly on the floor with injury to my back, she was deliberately indifferent." ECF No. 3 at 3. In moving for summary judgment as to this claim, Defendants argue, *inter alia*, that Hill provided Plaintiff with the care that, in her judgment, was required and thus cannot be found to be deliberately indifferent. ECF No. 59 at 8. Plaintiff argues in response that after a brief examination, Hill left him immobile on his cell floor with only a Motrin pill as treatment.[3] Plaintiff further argues that Hill provided him with such minimal

---

[3] Plaintiff asserts that after Hill departed his cell, he remained immobile and paralyzed for days. Defendants dispute this allegation, citing the lack of any contemporaneous evidence of this condition, Hill's observation of Plaintiff standing in his cell later that day, Plaintiff's having written a grievance the next day, and Plaintiff not including any mention of paralysis in his grievance. ECF No. 60 ¶¶ 18, 25-26, n.2. As per the relevant standard of review, for purposes of the instant motion, the Court views the evidence in the light most favorable to the Plaintiff as the nonmoving party.

medical attention on May 24, 2018 because she subjectively doubted the veracity of his claim that

he fell from his bunk and his description of his injuries. *See* ECF No. 65 at 4-6.

In support of their argument that Hill did not possess the requisite state of mind for

deliberate indifference, Defendants cite to Hill's affidavit describing her relevant actions.  ECF

No. 59 at 8.  Therein, she describes her interaction with Plaintiff, in pertinent part, as follows:

> 3.    Inmate Stevens was alert and talking to me.  I thoroughly assessed him for any
> injuries.  I discovered no acute injuries, no blood, no bruises, no reddened areas, no
> abrasions, no contusions, no lacerations, normal reflexes, no signs of paralysis, no
> numbness or tingling, and good pulses.  I log rolled him during the examination so
> that I was able to safely move him so I could assess his back.  I also found that he
> was able to tighten up and stiffen his muscles; in fact, he jerked and arched his back
> before I even touched him.  He had good strength in his arm - he actually squeezed
> my arm so hard that it hurt when I was helping him to sit up, so officers had to help
> me to get him into a seated position.  I gave him Motrin for the pain.  Inmate Stevens
> was able to lift a cup to his mouth to take his medication without assistance.  During
> my interactions with him, Inmate Stevens was very uncooperative, angry, and
> sarcastic with me.
>
> 4.    Even though Inmate Stevens told me that he fell from his bunk, there was
> nothing else on the floor with him - no sheets, blankets, mattress, or anything else
> were on the floor or out of order.  The lack of any injuries whatsoever - not even a
> small bruise or scratch or mark of any kind - combined with the lack of any other
> objects on the ground, led me to question whether he had actually fallen out of the
> bunk or had staged in the incident.  Nonetheless, I erred on the side of caution and
> treated him during my interactions with him as if he had indeed fallen out of the
> bunk.
>
> . . .
>
> 6.    Based on my thorough assessment of Inmate Stevens the first time I came to
> his cell, I concluded that he had no acute injuries and no apparent injuries of any
> kind and was not in any danger or in need of any other medical treatment other than
> Motrin for the pain he claimed to feel.  There was no medical reason to take him
> out of his cell or further evaluate or treat him at that time.

ECF No. 61-1 at 154-155.

As to the subjective element of the claim, Defendants have properly supported their motion

for summary judgment with record evidence that, in spite of her skepticism of Plaintiff's story,

Hill provided the medical treatment that she believed Plaintiff's claimed injury merited. Therefore, in order to defeat this motion, Plaintiff is required to identify evidence that demonstrates the existence of a genuine issue of material fact as to Hill's state of mind, *i.e.*, that she acted with wanton disregard of what she knew to be an excessive risk to his health or safety. He has not done so. Instead, Plaintiff offers only evidence that his injury developed in severity. He does not challenge Hill's objective observations during her examination, including the absence of any bruising or other objective indication of significant trauma. At best, the evidence that his asserted injury worsened over time may support a claim that Hill's treatment was medically inadequate. However, the provision of medically inadequate treatment does not equal deliberate indifference. As set forth above, the subjective aspect of deliberate indifference prevents a medical malpractice claim from becoming a constitutional claim. Because Plaintiff has not identified evidence to establish a genuine issue of material fact that Hill acted with a deliberately indifferent state of mind, Defendants are entitled to judgment as a matter of law on this claim.

   3.  Kim Smith, Michael Overmyer, Keri Moore, John Wetzel

   Plaintiff claims that Defendants Kim Smith, Michael Overmyer, Keri Moore, and John Wetzel were deliberately indifferent to his medical needs in the following ways.

   Plaintiff identifies Kim Smith as a CHCA (corrections health care administrator) who received notice of his injury via an inmate request to staff. ECF No. 3 at 4. Plaintiff also alleges that Smith falsified documents and lied in the response to his initial grievance.[4] *Id.*

---

[4] Plaintiff asserts that Kim Smith lied when she represented that she had spoken to Safety Manager Winger and he had told her that no guardrail was required or permitted in beds in the R.H.U. ECF No. 61-1 at 138; ECF No. 65 at 8. It is not clear whether he is asserting that she lied about consulting with Winger or about what he told her. In any event, even assuming that she lied in her grievance response, that act is insufficient to show her personal involvement in denying Plaintiff medical care.

Plaintiff identifies Michael Overmyer as Superintendent of S.C.I. Forest who denied Plaintiff's request for immediate medical care. *Id.* at 3-4.

Plaintiff identifies Keri Moore as Chief Grievance Officer at the Department of Corrections who took no action to remedy the wrongs suffered by Plaintiff as set forth in the grievance she reviewed. *Id.* at 2, 4.

Plaintiff identifies John Wetzel as the Secretary of the Department of Corrections, who took no action to remedy his subordinates' denial of treatment to Plaintiff. *Id.* at 2; ECF No. 61-1 at 42-43.

Defendants argue, *inter alia*, that these Defendants are entitled to summary judgment because Plaintiff has failed to demonstrate that they were personally involved in the alleged misconduct. ECF No. 59 at 12-13. Plaintiff does not directly respond to this argument; rather, he reiterates the factual bases for each Defendant's "knowledge" of Plaintiff's suffering. ECF No. 65 at 8-10.

Defendants are correct. Generally, state actors are liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). Supervisors may only be held liable under Section 1983 if they participated in the events that caused the constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976). Accordingly, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*, 845 F.2d at 1207); *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Government officials, therefore, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Id.* Furthermore, "it is not enough for a

plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Additionally, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013); *see also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Courts have routinely relied on this principle to dismiss civil rights allegations against prison officials, including health care administrators, whose only knowledge of the alleged violation stemmed from their participation in the grievance process. *See, e.g., Brown v. Nicholson*, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (dismissing claim against prison CHCA who "denied [plaintiff's] grievance . . . stating that he had received appropriate medical attention for his reported complaint"); *Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (dismissing claims against senior prison officials because the only allegations against them arose in the context of their participation in an administrative appeal process); *Mearin*, 951 F.Supp.2d at 782 (same).

These Defendants were neither personally involved in nor played any affirmative part in the denial of medical treatment to Plaintiff. Plaintiff alleges that their supervisory roles and/or their roles in the grievance process render them liable under Section 1983. As the above-stated law makes clear, no Section 1983 liability stems from these roles. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

C.          Negligence

1.     RN Hill

Plaintiff's negligence claim against Hill is identical to his deliberate indifference claim against her: "Registered Nurse Hill was negligent as she left me immobile lying helplessly on the floor with injury to my back, she was deliberately indifferent." ECF No. 3 at 3.

Defendants first argue that this claim must be dismissed because Plaintiff failed to submit a proper Certificate of Merit (COM) pursuant to Rule 1042.3 of the Pennsylvania Rules of Civil Procedure within 60 days of receiving notice of this deficiency. Rule 1042.3 requires a plaintiff in a professional negligence action to file a COM with the complaint, or within 60 days after the filing thereof. Pa. R. Civ. P. 1042.3. The COM must state that (1) "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge" of the defendant "fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm"; (2) the claim is "based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard"; or (3) "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa. R. Civ. P. 1042.3. The Third Circuit has held that Rule 1042.3 is substantive law that must be applied by federal courts under *Erie R.R. v. Thompkins*, 304 U.S. 64 (1983). *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011). The rule must also be applied in cases involving pro se litigants and incarcerated individuals. *Perez v. Griffin*, 304 Fed. Appx. 72, 74 (3d Cir. 2008); *Hodge v. Dep't of Justice*, 372 Fed. Appx. 264, 267 (3d Cir. 2010) (holding that Rule 1042.3 applies with equal force to both counseled and pro se plaintiffs).

On September 28, 2020, after Defendants filed their motion for summary judgment, Plaintiff filed a COM stating that "expert testimony of an appropriate professional is unnecessary for prosecution of this claim," apparently invoking subsection (a)(3) of Rule 1042.3. Plaintiff is correct that subsection (a)(3) of Rule 1042.3 authorizes a plaintiff in a professional negligence action to take the position that the defendant's deviation from the standard of care is so obvious that expert testimony is unnecessary to establish it. But the filing of a COM under subsection (a)(3) of the rule has consequences. It commits the plaintiff to prosecuting his professional negligence claim without expert testimony. *Liggon-Redding*, 659 F.3d at 265. This commitment is fatal to Plaintiff's medical malpractice claim in this case. Pennsylvania law is clear that Plaintiff cannot establish a prima facie case of medical malpractice without expert testimony:

> The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury. Hence, causation is also a matter generally requiring expert testimony. A very narrow exception to the requirement of expert testimony in medical malpractice actions applies "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons," also conceptualized as the doctrine of res ipsa loquitur.

*Toogood v. Owen J. Rogal*, D.D.S., P.C., 573 Pa. 245, 255, 824 A.2d 1140, 1145 (2003) (citations omitted). The exception to required expert testimony is narrow, as "[i]t is well-settled that reliance on the doctrine of res ipsa loquitur in medical negligence cases 'must be carefully limited.'" *Njos v. United States*, 2017 WL 6949812, at *6 (M.D. Pa. Oct. 17, 2017).

To support a prima facie case of medical malpractice under Pennsylvania law, "the plaintiff must establish (1) a duty owed by the physician to the patient, (2) a breach of duty from the physician to the patient, (3) that the breach of duty was the proximate cause of, or a substantial

factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct result of that harm." *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990) (citing *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983)); Prosser, Law of Torts, Section 30 at 143 (4th ed. 1971); *Bishop v. Wexford Health Sources, Inc.*, 2019 WL 6311491, at *5 (W.D. Pa. Nov. 25, 2019). To support the first and second of these elements, the plaintiff must establish by expert opinion "the recognized standard of care and that the care or treatment rendered fell below such standard." *Titchnell v. United States*, 681 F.2d 165, 169 (3d Cir. 1982); *Maresca v. Mancall*, 135 Fed. Appx. 529, 531 (3d Cir. 2005); *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997) ("[A] plaintiff must present expert testimony to establish to a reasonable degree of medical certainty that the defendant's acts deviated from an accepted medical standard, and that such deviation was the proximate cause of the harm suffered."). Where the plaintiff's medical expert fails to "articulate an opinion … that [the defendant] breached any requisite standard of care," the defendant is entitled to judgment as a matter of law. *Maresca*, 135 Fed. Appx. at 531; *Hakeem v. Salaam*, 260 Fed. Appx. 432, 435 (3d Cir. 2008) ("Absent expert opinion that the [defendant's] treatment deviated from acceptable medical standards, a reasonable fact-finder could not conclude that the [defendant] acted negligently") (applying Pennsylvania law in a Federal Tort Claims Act case). "The only instance in which expert testimony is not required is when the matter is so simple or the lack of care so obvious as to be within the range of experience and comprehension of non-professional persons." *Hakeem*, 260 Fed. Appx. at 435 (citing *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 n. 1 (1997)).

In the present case, Plaintiff's assertions that Hill deviated from the standard of care and that such deviation caused or aggravated his injury are not matters within the common knowledge

of jurors such that he can proceed on this claim at trial without expert testimony. Because Plaintiff has committed himself to proceed without an expert, his negligence claim fails as a matter of law.

In addition to raising Rule 1042.3 as a bar to Plaintiff's claim against Hill, Defendants also argue that Defendants also attack the substance of the claim. Specifically, they rely upon the absence of evidence to support the essential element of causation in Plaintiff's negligence claim. ECF No. 59 at 11. As set forth above, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In opposition, Plaintiff does not cite to any evidence, but baldly asserts that "[w]hile log rolling plaintiff, RN Hill subjected him/caused him further injury." ECF No. 65 at 8. Even if this assertion, which is a variation on Plaintiff's theory that that Hill's inaction that caused him injury, supported his negligence claim, it is insufficient to defeat the motion for summary judgment. Plaintiff has produced no evidence to establish that Hill's log roll (or any other action or inaction on her part) caused him injury. While Plaintiff was ultimately diagnosed with sciatica, there is no evidence connecting that diagnosis to Hill's treatment. Thus, Plaintiff's failure to produce evidence of an essential element of his negligence claim against Hill also entitles Defendants to judgment as a matter of law on this claim.

      2.     Winger

Plaintiff claims that Winger, the safety manager at S.C.I. Forest, was negligent in not providing a safety rail on the top bunk of the beds in the R.H.U. ECF No. 3 at 3. In support of their motion for summary judgment, Defendants argue, *inter alia*, that Winger enjoys sovereign immunity from this suit because he is an employee of the Commonwealth of Pennsylvania who was acting within the scope of his employment. ECF No. 59 at 14-18. In response to this

argument, Plaintiff argues that Winger does not qualify for sovereign immunity because he has been sued in both his official and individual capacities. ECF No. 65 at 10-11.

Defendants are correct. Outside of a limited waiver not applicable here, the doctrine of sovereign immunity bars suit against the Commonwealth of Pennsylvania or state employees whenever they are acting within the scope of their official duties. *DeForte v. Blocker*, 2017 U.S. Dist. LEXIS 42756, at *34-35 (W.D. Pa. March 24, 2017) (citations omitted). This protection applies regardless of whether Commonwealth employees are sued in their official or individual capacities. *Id.*

Plaintiff does not dispute that Winger is a state employee or that he was acting within the scope of his official duties at the relevant time. In opposition to the motion for summary judgment on this basis, Plaintiff cites only to caselaw concerning the Eleventh Amendment and Section 1983 claims. ECF No. 65 at 10-11. The cited cases and their holdings are not applicable to the state law claim of negligence brought against Winger.

Defendants are entitled to judgment as a matter of law on this claim.

IV.    Conclusion

For the reasons discussed herein, the following order is entered:


ORDER

AND NOW, this 24th day of May, 2021, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, ECF No. 58, is GRANTED.


RICHARD A. LANZILLO
United States Magistrate Judge